IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY DENNIS VILLEGAS,

      Petitioner,                     No. CIV S-05-0248 GEB JFM P

      vs.

JEANNE S. WOODFORD, etc., and
DAVID L. RUNNELS, Warden,

      Respondents.             FINDINGS AND RECOMMENDATIONS

                          /

          Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction on charges of attempted premeditated murder, conspiracy to commit assault with a deadly weapon, and assault with a deadly weapon (a firearm), enhanced by findings that petitioner intentionally and personally inflicted great bodily injury with a firearm as to count one, and that petitioner personally used a firearm and inflicted great bodily injury as to all counts. Petitioner was sentenced to 32 years to life in prison. Petitioner alleges that his Fifth Amendment right against self-incrimination was violated by the trial court's admission of a videotaped conversation between petitioner and his codefendant.

/////

1

FACTS[1]

Prior to the December 20, 2001, shooting, Correy Lee had been a friend of [petitioner] and Thomas Menacho for about one year. Lee also knew the victim, Kenny Vaughn, who had been to her residence on a few prior occasions.[2] Lee believed that Vaughn had stolen some jewelry from her residence on one of those occasions. She told [petitioner] about her suspicions.

On December 20, 2001, [petitioner] and Menacho were waiting at Lee's residence when she returned home at around 6:00 p.m. Lee invited them in, and, at approximately 6:30 p.m., she paged Vaughn while [petitioner] and Menacho were present. Vaughn returned the call and Lee indicated that she would be interested in buying drugs from him. Vaughn told Lee that he would be there in 20 minutes. When Lee told [petitioner] that Vaughn was on his way, [petitioner] asked her, "Do you want me to do something about that?" Lee testified that no clarifying statement or further discussion ensued. Lee believed that Vaughn might "be scared" or "get beat up or something." Lee later told a police investigator that she "wouldn't [have] mind[ed] seeing" Vaughn "get beat up."

[Petitioner] and Menacho then left Lee's residence for about 10 minutes. When they returned, [petitioner] was armed with a rifle and Menacho was armed with a handgun. Lee asked about the guns and both [petitioner] and Menacho indicated that they were going to use the guns to scare Vaughn. Lee did not tell [petitioner] or Menacho to take the guns out of the house.

Vaughn arrived at Lee's house within the next five minutes. Lee answered the door. Vaughn took three or four steps inside and Lee tried to search him for weapons. Vaughn heard the cocking of a powerful firearm and then spotted [petitioner] pointing a gun at him. [Petitioner] told Vaughn, "Don't move." At first, Vaughn did not move. However, when he saw Lee put her hands over her ears and turn to run away, Vaughn headed for the door. A fraction of a second later, he heard a gunshot. Vaughn was able to get away, and he did not realize he had been shot in the back until he was halfway down the street. Then, as [petitioner] and Menacho looked out of a door to see if they could see Vaughn, [petitioner]

/////

/////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Villegas, No. C042239 (February 5, 2004), a copy of which was lodged in the record on April 10, 2008 as Lodged Document No. 4.

[2] Lee lived in a converted warehouse that used to be a machine shop.

pointed to a bullet shell casing that was lying on the floor and told Lee to "just get rid of that."

(People v. Villegas, slip op. at 2-3.)

## ANALYSIS

### I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

3

question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. Petitioner's Claim[3]

Petitioner claims that his Fifth Amendment right against self-incrimination was violated by the admission into evidence of a videotaped conversation between petitioner and his co-defendant made while the two were in custody. Petitioner claims that he had invoked his right to counsel under Miranda v. Arizona, 384 U.S. 436 (1966) before the police placed him in an interview room with his co-defendant and secretly videotaped their conversation. The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.

The state court of appeal set forth this claim and the facts relevant to it as follows:

> [Petitioner] contends the trial court erred by admitting a videotape of his conversation with Menacho in a police interrogation room. He claims the tape was inadmissible because he had invoked his rights to counsel and to remain silent and because Menacho was acting as a police agent.
>
> *Background*
>
> After [petitioner] and Menacho were arrested in Lewiston, they were brought to Redding for questioning. Investigators Nicolay and Hughes interviewed [petitioner] and investigators Stainberg and Fogarty interviewed Menacho. At the outset of [petitioner]'s interview, Nicolay read [petitioner] his rights and [petitioner] indicated that he understood each and every one of those rights. During the interrogation, this exchange occurred between [petitioner], Hughes, and Nicolay:

---

[3] In the answer, respondents address a claim that petitioner's Sixth Amendment rights were violated by admission of the videotaped conversation with petitioner's co-defendant because the co-defendant was acting as a government agent. See Answer to Petition for Writ of Habeas Corpus, filed April 27, 2005, at 9-10. Such a claim arises under Massiah v. United States, 377 U.S. 201 (1964) and its progeny. While addressing the claim, respondents also content that is "arguably" unexhausted. Answer, at 10 n.4. In the traverse, petitioner expressly states that he is relying solely on the Fifth Amendment and that he is not relying on the Sixth Amendment or Massiah and its progeny in the instant action. See Traverse of Answer to Petition for Writ of Habeas Corpus, filed May 26, 2005, at 5.

4

1
2
3
    [Nicolay]: I'm waiting for you to tell me what happened, how was it . . . what caused it to happen? Because I know it didn't intentionally happen. It was an accident is what [Lee] said.

    "[[Petitioner]]: And this is my lawyer right here?

    "[Nicolay]: No, this is a detective.

    "[Hughes]: I'm a detective.

    "[[Petitioner]]: Okay. Don't I need to wait for my lawyer?

    "[Hughes]: You can do whatever you want to do.

    "[[Petitioner]]: Actually I need to go to the bathroom, ha!

    "[Hughes]: Okay. Let's go to the bathroom.

    "[Nicolay]: You know, we're just trying to . . . I know where you're coming from. You're scared. You know. I know that. You got to face facts some times [*sic*]. Other people are talking . . . and the best thing for you to do is to . . . tell (inaudible)."

   [Petitioner] then took a bathroom break and, when he returned, the questioning resumed.

   Thereafter, the investigators decided to put [petitioner] and Menacho in the same interview room and monitor their conversation. Stainberg did not ask Menacho to speak with [petitioner] or give Menacho any questions to ask [petitioner]. Stainberg did not recall making any promises to Menacho or giving him any directions with regard to his conversation with [petitioner]. Stainberg did not say that he could do anything about Menacho's probationary status.

   Similarly, Fogarty did not ask Menacho to speak with [petitioner], did not suggest any questions for Menacho to ask, and did not tell Menacho that things would go better for him if he spoke with [petitioner].

(People v. Villegas, slip op. at 11-12.) The state court rejected petitioner's claim that these events violated his rights under the Fifth Amendment on the ground that petitioner "did not actually request an attorney, and the officers were not obligated to cease their interrogation." Id. at 14-15.)

/////

A suspect who invokes the right to counsel cannot be questioned unless an attorney is present or the suspect reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards* requires courts to "determine whether the accused actually invoked his right to counsel." *Davis [v. United States]*, 512 U.S. [452] at 458, 114 S.Ct. 2350 [(1994)] (internal quotations and citations omitted; emphasis in original). The inquiry is objective. *Id*. at 459, 114 S.Ct. 2350. At a minimum, invocation of the right to counsel requires "some statement that reasonably can be construed to be an expression of a desire for the assistance of an attorney." *Paulino v. Castro*, 371 F.3d 1083, 1087 (9th Cir.2004) (internal quotations and citation omitted). To invoke the right to counsel, a suspect must "unambiguously" request counsel:

> reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel ... do[es] not require the cessation of questioning.

*Davis*, 512 U.S. at 459, 114 S.Ct. 2350 (emphasis in original); *accord Paulino*, 371 F.3d at 1087.

U.S. v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005). In Younger, the United States Court of Appeals for the Ninth Circuit surveyed precedent on what constitutes an unequivocal request for a lawyer:

> In *Davis*, for example, the suspect waived his right to counsel but later said "[m]aybe I should talk to a lawyer." 512 U.S. at 455, 114 S.Ct. 2350. The Supreme Court held that the statement was not an unambiguous request for counsel that required questioning to stop. Davis, 512 U.S. at 462, 114 S.Ct. 2350; *see also Paulino*, 371 F.3d at 1087 ("[w]here's the attorney" and "[y]ou mean it's gonna take him long to come?" not unambiguous requests for counsel); *Clark*, 331 F.3d at 1071 ("I think I would like to talk to a lawyer" not an unambiguous request for counsel); *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir.1999) ("[w]hat time will I see a lawyer?" not an unambiguous request for counsel).
>
> By comparison, in *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir.1999), we concluded that, when considered together, a suspect's three questions-" '(1) Can I get an attorney right now, man?; (2) You can have attorney right now?; and (3) Well, like right now you got one?' "-constituted an unambiguous request for counsel. In *United States v. Cheely*, 36 F.3d 1439, 1448 (9th Cir.1994), we held that a suspect's comment that "my attorney does not want me to talk to you" in tandem with a refusal to sign a

/////

1    written waiver of the right to an attorney was an unambiguous
2    request for counsel.

3  Id.

4       On December 24, 2001, following his arrest and prior to the videotaped
5  conversation at issue, petitioner was questioned by two police detectives.  See Clerk's Transcript
6  on Appeal (CT), at 207, 254-273.  The interview started as follows:

7       D1:  Jerry?

8       JV:  How's it going?

9       D1:  I'm Pete.  This is Gary.

10      D2:  Hi.

11      D1:  Looks like you've been up for about three days.  Tired?

12      JV:  No, I'm not, I'm just (inaudible).

13      D2:  All right.  What. . . do you want to way what we're going to do here?

14 CT at 254.  Shortly thereafter, the following colloquy took place:

15      D1:  All right. Jerry, I'm going to advise you of your rights.
             Okay?  You have the right to remain silent.  Do you
16           understand?  Say yes or no?

17      JV:  Yes.

18      D1:  Okay.  Anything you say may be used against you in court.  Do you
             understand?
19
        JV:  Yes.
20
        D1:  If you cannot afford an attorney one will be appointed for you free of charge
21           before any questioning if you want it.  Do you understand that?

22      JV:  Yes.

23 CT at 255.  Thereafter, the detectives engaged in extensive questioning of petitioner about the
24 shooting.  Id. at 255-266.  More than halfway through the questioning, the following exchange
25 took place:
26 /////

       JV: Why are you getting so upset? Say I was there? You was already telling me I was there?

       D1: We know you were there?

       JV: So then what are you waiting on?

       D1: I'm waiting for you tell me what happened, how was it . . . what caused it to happen? Because I know it didn't intentionally happen. It was an accident is what Cory said.

       JV: And this is my lawyer right here?

       D1: No, this is a detective.

       D2: I'm a detective.

       JV: Okay. Don't I need to wait for my lawyer?

       D2: You can do whatever you want to do.

       JV: Actually I need to go to the bathroom, ha!

CT at 266. Shortly thereafter, the following exchange took place:

       D2: Don't you want your. . .don't you want an opportunity to say what you have to say about this?

       JV: What do I have to say? No.

CT at 267. At the evidentiary hearing on his motion to suppress the videotaped conversation, petitioner testified that by the foregoing statements he meant he did not want to talk to the detectives. Reporter's Transcript on Appeal (RT), at 436-37.

       Petitioner contends that the questions and statements set forth supra, taken together, were sufficient to invoke his right to counsel. However, none of the questions or statements relied on by petitioner, separately or in combination, constituted an unambiguous request for the assistance of an attorney.

       Petitioner also contends that he invoked his right to remain silent by the foregoing exchanges. The state court of appeal did not analyze the question of whether petitioner had invoked his right to remain silent separately from the question of whether petitioner had invoked

8

his right to counsel.  See People v. Villegas, slip op. at 10-15.  After noting that petitioner contended that he had invoked both his right to counsel and his right to remain silent, the state court of appeal rejected petitioner's claim in its entirety after finding that petitioner "did not actually request an attorney, and the officers were not obligated to cease their interrogation."  Id. at 14-15.

Under Miranda, if an individual "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  Miranda v. Arizona, 384 U.S. 436, 473-74 (1966).  The court has reviewed the entire transcript of the exchange between petitioner and the two detectives.  CT at 254-273.  After completion of said review, the court finds that petitioner did not unequivocally invoke his right to remain silent under Miranda during the exchange with the detectives.

In order to obtain relief in this federal habeas corpus proceeding, petitioner must show that the state court's determination that petitioner had not invoked his rights to counsel and to remain silent was contrary to, or an unreasonable application of, United States Supreme Court precedent.  Petitioner has not made the required showing.  Thus, even assuming arguendo that placement in a cell with a co-defendant might, under some circumstances, constitute the "functional equivalent" of interrogation, see Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the court need not determine whether petitioner's placement in the cell with his co-defendant was in this case.

For all of the foregoing reasons, this court finds that the state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Accordingly, petitioner's application for a writ of habeas corpus should be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////


These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 14, 2008.

/s/ John F. Moulds
UNITED STATES MAGISTRATE JUDGE

12
vill0248.157